Simon Schwarz, Esq. *Pro Hac Vice*
Attorney for Plaintiff
954 Lexington Ave., No. 261
New York, NY 10021-5013
Tel.:    347-852-3514
E-mail: sschwarz@justice.com

FILED
CLERK, U.S. DISTRICT COURT

JUN 17 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

.................................................X

UNITED TORAH  EDUCATION )
& SCHOLARSHIP FUND, INC., )
a Florida non for profit corporation, )
)
Plaintiff, )
)
-against- )
)
SOLOMON CAPITAL LLC, a New York )
Limited Liability Company, SOLOMON )
CAPITAL 401(k) TRUST, a New York )
qualified retirement trust, SOLOMON )
CAPITAL LIVING TRUST, a New York )
qualified retirement trust, SOLOMON )
CAPITAL ADVISORS INC., a New York )
Corporation, SOLOMON PARTNERS LLC, )
a New York Limited Liability Company, )
ADVANTAGE PREMIUM FUNDING )
LLC, a New York Limited Liability Company )
SOLOMON SHARBAT, an individual )
now domiciled and residing in Israel, and )
JOHN DOES 1-100, fictitious persons, and )
XYZ CORPS. 1-100, fictitious entities, )
)
Defendants. )
.................................................X

CV13-    4330 DSF (PLA)

**Case No.**

**VERIFIED COMPLAINT**

Plaintiff, UNITED TORAH EDUCATION & SCHOLARSHIP FUND, INC., by

and through the undersigned attorneys, complaining of the above-named

defendants, alleges as follows:

## I.   NATURE OF ACTION

1.   This is an action that seeks the limited exercise by this Court of its *quasi in rem* jurisdiction over the defendant's property found within the geographical borders of this district, by issuing an attachment and seizing such property as security for satisfaction of a potential monetary judgment up to the value of such property, but not to exceed $712,040.00, as a result of defendants' breach of contract, breach of trust and fiduciary duty, fraud and conversion of trust funds. An action for a money judgment against the same defendants, on the same grounds, based on *in personam* jurisdiction, has been commenced against the defendants in the Federal District Court for the Southern District of New York, No. 13 CIV 3619 (SULLIVAN) on May 29, 2013.

## II.   JURISDICTION AND VENUE

2.   This Court has *quasi in rem* jurisdiction of this action pursuant to Fed.R.Civ.P. 4(n)(2) which permits the Court to assert jurisdiction over the defendants' property found in the Central District of California, and to acquire such jurisdiction by seizing such property under the circumstances and in the manner provided by state law in this district, to wit, Title 6.5, Chapter 12 of the the Cal.Civ.P.Code ("C.C.P."), §§ 492.010-492.090, entitled "Nonresident Attachment."

3.   Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 in that the property of the defendants at issue are located within this judicial district.

## III.   PARTIES

4.   Plaintiff, UNITED TORAH EDUCATION & SCHOLARSHIP FUND, INC. ("UNITED TORAH" or "Plaintiff"), is and was at all times herein mentioned a

foreign not for profit corporation incorporated under the laws of the State of Florida, with its principal place of business located at 7505 London Lane, Boca Raton, Florida 33433. Plaintiff does not solicit or conduct any business in California, and engages in the distribution of endowed charitable funds to (i) organizations that provide for, or enhance, Torah education among young Jewish adults, including the provision of scholarship funds for young Jewish adults to attend yeshivas and other Torah centers, (ii) individual Torah scholars that are in need of support, (iii) the reprinting and dissemination of classic Jewish texts for scholastic and Torah education purposes and (iv) general charity to the poor.

5.      Defendant, SOLOMON CAPITAL LLC ("SOLOMON CAPITAL"), was at all relevant times to this lawsuit and still is a New York limited liability company, and defendant SOLOMON SHARBAT is its sole member. Upon information and belief, since in or about January 2010, SOLOMON CAPITAL has been a defunct limited liability company that has not done any real business or earned any real income.

6.      Defendant, SOLOMON CAPITAL 401(k) TRUST, purports to be a qualified retirement trust organized under the laws of the State of New York, and defendant SOLOMON SHARBAT serves as its trustee. Upon information and belief, since at least January 2010, SOLOMON CAPITAL 401(k) TRUST has been a fully or substantially depleted retirement trust.

7.  `    Upon information and belief, defendant, SOLOMON CAPITAL LIVING TRUST, purports to be a qualified retirement trust organized under the laws of the State of New York, and defendant SOLOMON SHARBAT serves as its trustee.

8.      Defendant, SOLOMON CAPITAL ADVISORS INC. ("SOLOMON CAPITAL ADVISORS"), was at all relevant times to this lawsuit and still is a New York corporation, and defendant SOLOMON SHARBAT is its sole shareholder, officer and director. Upon information and belief, at all relevant times to this lawsuit, SOLOMON CAPITAL ADVISORS has been a defunct corporation that has not done any real business and has not earned any real income.

9.      Defendant, SOLOMON PARTNERS LLC ("SOLOMON PARTNERS"), was at all relevant times to this lawsuit and still is a New York limited liability company, and defendant SOLOMON SHARBAT is its sole member.  Upon information and belief, at all relevant times to this lawsuit, SOLOMON PARTNERS has been a defunct limited liability company that has not engaged in any real business and has not earned any real income.

10.     Defendant, ADVANTAGE PREMIUM FUNDING LLC ("ADVANTAGE PREMIUM FUNDING"), was at all relevant times and still is a New York limited liability company, and defendant SOLOMON SHARBAT is its sole member. Upon information and belief, since at least January 2010, ADVANTAGE PREMIUM FUNDING has been a defunct limited liability company that has not engaged in any real business and has not earned any real income.

11.     Defendant SOLOMON SHARBAT ("SHARBAT"), is an individual who formerly resided in Forest Hills, New York and conducted his business at 654 Madison Avenue, Suite 1507, New York, New York 10022 prior to in or about January 2010 when he relocated with his parents to Gush Halav 10, Apt.3, 2d Floor, Tel Aviv, Israel 64581

and, upon information and belief, became a citizen of the State of Israel. Upon information and belief, SHARBAT has not returned or visited the United States since his relocation and is now domiciled in Israel. SHARBAT has previously worked in the finance and investment industries in New York for over 15 years in the capacity of insurance salesman, licensed stock salesmen for several brokerage firms, finder and investor in new or fledgling enterprises, and continues to do so in Israel.

12.    At all relevant times to this suit, defendant SHARBAT has exercised, and continues to exercise, complete domination of each of the other defendants, SOLOMON CAPITAL LLC, SOLOMON CAPITAL 401(k) TRUST, SOLOMON CAPITAL ADVISORS INC., SOLOMON PARTNERS LLC, and ADVANTAGE PREMIUM FUNDING LLC (collectively, the "ENTITY DEFENDANTS"), causing each of them to act as his alter ego and that of each other, by transacting *primarily* the business of his dominating interest rather than their own, comingling business and SHARBAT's personal expenses, acting as instrumentalities of fraud against third parties, and functioning in complete disregard of any corporate, limited liability company or qualified retirement trust formalities required by New York law.

13.    Thus, the securities trading accounts and/or bank accounts held in the name of each of the defendants have been, and continue to be, used by SHARBAT primarily or substantially for the satisfaction of his own personal extravagant living expenditures and his own investment and tax strategies, and used as instrumentalities to defraud plaintiff UNITED TORAH and other unsuspecting investors and companies seeking investment banking services that he is not licensed to provide by way of highly irregular, large money

transfers between the defendants as dictated by SHARBAT's fraudulent activities and personal needs, without any consideration or economic justification. Indeed, such monies were transferred and shifted by and between such defendants in irregular patterns for the principal purposes of: (i) conducting SHARBAT's personal business in the corporate, limited liability company or qualified trust form, as the case may be, (ii) hiding SHARBAT's personal assets from UNITED TORAH and other creditors by dispersing and parking them in multiple securities and bank accounts under corporate, limited liability company or qualified trust veils, and (ii) paying for hundreds of thousands of dollars of SHARBAT's personal living expenses on a regular and consistent basis.

14. JOHN DOES 1-100 and XYZ CORPORATIONS/XYZ LLCs 1-100 are presently unknown to plaintiff UNITED TORAH by their true names and capacities, whether individual, corporate, limited liability company, or trust entities, and these defendants are therefore sued by such fictitious names as additional alter egos of the individual defendant SHARBAT and of each other; plaintiff intends to amend this Complaint to show the true names and capacities of these defendants when the same have been ascertained.

## IV. CLAIM FOR RELIEF

### ATTACHMENT AND SEIZURE OF ASSETS BASED ON BREACH OF CONTRACT- ALL DEFENDANTS

15. Plaintiff repeats, realleges, and incorporates the allegations of paragraphs 1 through 14 of this Verified Complaint as if set forth at length herein.

16. On March 19, 2008, defendant SOLOMON CAPITAL, through its sole and dominating shareholder defendant SHARBAT, entered into an

---

Verified Complaint                                                    Page 6

agreement with UNITED TORAH, whereby SOLOMON CAPITAL agreed to sell and deliver 250,000 shares of stock of Perf-Go Green Inc. ("PGOG") to plaintiff UNITED TORAH, in consideration of, and in return for, the immediate payment by plaintiff UNITED TORAH of the sum of $ 75,000.00 via wire transfer to SOLOMON CAPITAL.  At the time of the aforesaid agreement, SOLOMON CAPITAL had already obtained the rights to purchase 750,000 free-trading and unencumbered PGOG shares at a special low price of $.10 per share, or $75,000.00, as part of an investment banking fee in connection with a reverse merger involving PGOG stock.

17.     A written letter agreement executed by both parties that day, as drafted pursuant to SHARBAT's instructions, required SOLOMON CAPITAL to make a "donation" of 250,000 PGOG shares of stock to UNITED TORAH without mentioning the consideration of $75,000. A true and accurate copy thereof is annexed hereto as **Exhibit A** and incorporated herein by reference. However, immediately upon full execution of this letter agreement, UNITED TORAH transferred by bank wire the $75,000.00 consideration it promised as a *quid pro quo* for the transfer and delivery to it of 250,000 PGOG shares by SOLOMON CAPITAL. A true and accurate copy of bank records evidencing the wire transfer and receipt of $75,000 by SOLOMON CAPITAL on March 19, 2008 is annexed hereto as **Exhibit B** and incorporated herein by reference. The March 19, 2008 letter together with the same day wire transfer constitute evidence of a binding contract between UNITED TORAH and SOLOMON CAPITAL.

18.     On information and belief, the manner in which this simple financing and stock purchaser transaction was handled in writing, at SHARBAT's direction, was

motivated by SHARBAT's desire to conceal from his employer and from the over the counter market regulator, FINRA, this questionable *quid pro quo* financial transaction involving the sale of 250,000 shares of unrestricted penny stock for $75,000.00 and to portray it instead as a benevolent donation of 250,000 PGOG shares to a charitable organization without their knowledge of the $75,000.00 payment received in return.

19.   In order to effectuate delivery of the PGOG stock to be purchased by UNITED TORAH, defendant SHARBAT, on behalf of SOLOMON CAPITAL, further promised and agreed to arrange for the direct issuance of 250,000 PGOG shares to UNITED TORAH, or, in the alternative, if such arrangement could not be effectuated, then it promised to transfer 250,000 PGOG shares to plaintiff by way of endorsement and delivery of the stock certificates upon their receipt.

20.   As stated, plaintiff performed its obligation under such agreement and immediately tendered the consideration of $75,000.00 by wire transfer to defendant SOLOMON CAPITAL on that very same day. Immediately upon receipt of such wire transfer, defendant SOLOMON CAPITAL sent the same $75,000.00 to Perf-Go Green Inc. to pay for its own purchase of the total bundle of 750,000 shares of PGOG shares made available to it at the price of only $.10/share as aforesaid.

21.   Nevertheless, Defendant SOLOMON CAPITAL failed to perform any of its obligations under the March 19, 2008 agreement. First, on information and belief, SHARBAT failed to advise Perf-Go Green Inc. of its sale of a portion of the 750,000 shares it was purchasing, or 250,000 shares, to UNITED TORAH to fund his $.10/share purchase. As a result, Perf-Go Green issued all of the 750,000 PGOG shares directly to

SOLOMON CAPITAL in late May 2008, only several days before its planned reverse merger. Second, claiming that it had received delivery of 750,000 shares directly to SOLOMON CAPITAL's trading account via book entry under the DDT direct deposit transfer system instead of the physical delivery of certificates, SOLOMON CAPITAL promised to transfer the 250,000 PGOG shares plaintiff had purchased via book transfer, or journal entry, to UNITED TORAH if it opened up its own trading account at TD Ameritrade.  Nevertheless, UNITED TORAH complied with SHARBAT's request and completed the required application for its own securities trading account.

22.    Thereafter, TD Ameritrade, the brokerage firm for the defendants, refused to allow any transfer of shares by SOLOMON CAPITAL, based on its established policy, unknown to plaintiff,  of not allowing such internal transfers of  newly issued and unrestricted shares. Upon information and belief, this policy had been well known at the time to SHARBAT, an experienced stock trader, notwithstanding his professed surprise at the TD Ameritrade rejection of such book transfer.

23.   By written letter agreement dated June 5, 2008, a true and accurate copy of which is annexed hereto as **Exhibit C** and incorporated by reference, plaintiff and defendant SOLOMON CAPITAL modified their original agreement of March 19, 2008. Under the modified terms, UNITED TORAH granted SOLOMON CAPITAL the conditional power and authority as its agent, "to sell [UNITED TORAH's] 250,000 shares in the SOLOMON CAPITAL trading account during the next several days as long as the price exceeds $2.50, and to remit the proceeds to us [UNITED TORAH] within 5 days thereafter (*id.*)."

24.     As a further and additional assurance that plaintiff UNITED TORAH would maintain full control over the trading done on its behalf through the SOLOMON CAPITAL account, defendant SOLOMON CAPITAL allowed UNITED TORAH's president to execute all trades of its 250,000 PGOG shares, in the internet trading account of defendant SOLOMON CAPITAL held at TD Ameritrade on June 5 and 6, 2008. No other trades were made on behalf of SOLOMON CAPITAL itself of the PGOG shares it owned until UNITED TORAH completed its sale of all 250,000 PGOG shares.

25.     As a result, UNITED TORAH generated specifically identifiable sales proceeds from all its stock sales transactions recorded in the TD Ameritrade statements sent to SOLOMON CAPITAL, which SHARBAT calculated from the information displayed on the internet trading account to be about $675,000. The actual TD Ameritrade statement provided to plaintiff by SHARBAT more than one year later, a true and accurate copy of which is annexed hereto as **Exhibit D** and incorporated by reference, showed actual sales proceeds of $685,040.00 earned by plaintiff in the SOLOMON CAPITAL agency trading account on June 5 and 6, 2008[1].

26.     In accordance with the terms of the June 5, 2008 modification agreement, UNITED TORAH thereafter demanded that defendant SOLOMON CAPITAL turn over to plaintiff the estimated sales proceeds of $685,040.00 which belonged to it. In breach of their agreement, SOLOMON CAPITAL has refused, and continues to refuse, to do so. The failure to turn over the funds to plaintiff as agreed to and its

---

[1] Because trading actually took place on the Hamburg exchange in Germany, the delayed reporting lists these sales under later dates.

subsequent retention by SOLOMON CAPITAL constituted a clear and material breach of the March 19, 2008 agreement, as modified by the June 5, 2008 letter agreement.

27.     Instead, in further breach of contract, defendant SOLOMON CAPITAL and its alter egos, the other named defendants, each received substantial portions of such proceeds of $685,040.00 from the SOLOMON CAPITAL securities trading account at TD Ameritrade, through highly irregular and large inter-account bank transfers, at the direction of the controlling and dominating shareholder, member or trustee of each, SHARBAT, and then disposed of and used all such proceeds for the personal benefit of defendant SHARBAT, without the knowledge or consent of plaintiff.

28.     By reason of the foregoing breach, and as a proximate and direct result thereof, plaintiff has been injured, and sustained damages in the sum of $685,040.00, plus pre-judgment interest thereon from June 6, 2008 of no less than $72,000 at 2%, compounded annually, or a total of $757,040.00, no part of which has been paid as of the date hereof, and defendant SOLOMON CAPITAL and its alter egos, defendant SHARBAT and the other ENTITY DEFENDANTS, are liable therefor, jointly and severally.

## ATTACHMENT AND SEIZURE OF ASSETS BASED ON BREACH OF TRUST AND FIDUCIARY DUTY- ALL DEFENDANTS

29.     Plaintiff realleges the allegations of paragraphs 1 to 14 and 16 to 28 inclusive of this Complaint, as if set forth at length hereat.

30.     Defendant SOLOMON CAPITAL and each of the other defendants, who acted as its alter egos and that of each other, took and held such identified

funds of at least $675,000.00 obtained from the sale of 250,000 PGOG shares belonging to plaintiff UNITED TORAH, as its agent, in a fiduciary capacity, subject to turnover by a fixed date pursuant to the June 5, 2008 letter modification and trust agreement. Defendant SOLOMON CAPITAL and each of the other defendants, its alter egos, breached such trust and fiduciary duty in retaining the aforementioned trading proceeds for their own benefit without permission and not paying them over to plaintiff.

31.   Each of such other defendants, actively conspired to, and did aid in effectuating the aforementioned conversion of plaintiff's identified funds by way of their bank and brokerage accounts which were used to conceal and convert the cash proceeds from the sale of plaintiff's 250,000 PGOG shares by defendant SOLOMON CAPITAL, and all of the defendants are liable therefor, jointly and severally as its alter egos.

32.   Further, defendant SOLOMON CAPITAL, and each of the other defendants acting as its alter egos, also owed and still owe a fiduciary duty to plaintiff, for an amount yet unknown pending an accounting, of any profits and/or assets derived from the wrongful retention and/or disposition and/or investment of the aforementioned sum specified and any additional profits and assets derived therewith, to be exactly determined upon defendants' accounting therefor. By retaining and using such sum for its own benefit without plaintiff's permission, defendants impliedly promised to hold it and any assets and profits derived therefrom in trust for plaintiff; alternatively, such obligation was imposed upon it by law.

Verified Complaint                                                          Page 12

33.   By reason of the foregoing breach of contract, plaintiff has suffered damages, and SOLOMON CAPITAL and the other named defendants, as its alter egos, are therefore jointly and severally liable for the damages sustained by plaintiff in the sum of $685,040.00, plus pre-judgment interest thereon from June 6, 2008 of no less than $72,000 at 2%, compounded annually, or a total of $757,040.00, and any assets, earnings or trading profits derived from the unlawful retention and use of such monies, not yet determined, which rightfully belongs to plaintiff UNITED TORAH.

### ATTACHMENT AND SEIZURE OF ASSETS
### BASED ON CONVERSION- ALL DEFENDANTS

34.   Plaintiff realleges the allegations of paragraphs 1 to 14, 16 to 28 and 30 to 33 inclusive of this Complaint, as if set forth at length hereat.

35.   Plaintiff UNITED TORAH is and was at all times herein mentioned, the rightful owner of both (i) the 250,000 PGOG shares, having a superior ownership right to such personal property, and (ii) the sales proceeds derived therefrom of at least $685,040.00 in identified funds, as readily ascertainable from the TD Ameritrade trading account statements of defendant SOLOMON CAPITAL.

36.   Pursuant to the June 5, 2008 agreement, these identified funds were to be held by SOLOMON CAPITAL in trust, as agent of UNITED TORAH, and to be paid over to plaintiff no more than five business days later or June 13, 2008.

---

37.    Plaintiff now is, and at all times herein mentioned, was entitled to the immediate possession and use of all of the above identified funds not turned over to plaintiff as of June 13, 2008, which were, and continue to be, held in trust and in an agency capacity by defendant SOLOMON CAPITAL, in fact or as implied in law.

38.    Defendants, at the direction of its controlling and dominating shareholder SHARBAT, has failed and refused to pay over to plaintiff UNITED TORAH any part of such $685,040.00 cash proceeds of the aforementioned sales, despite repeated demands by plaintiff therefor, and have disposed of and used all of such funds for the personal benefit of defendant SHARBAT, without the knowledge or consent of plaintiff, to the exclusion of and in defiance of plaintiff's superior ownership right to such property.

39.    In effectuating such wrongful acts of conversion, the bank and/or brokerage accounts of each of the defendants SOLOMON CAPITAL 401(k) TRUST, SOLOMON   CAPITAL   ADVISORS,   SOLOMON   PARTNERS,   ADVANTAGE PREMIUM FUNDING and SHARBAT were used by defendant SOLOMON CAPITAL as alter egos of defendant SHARBAT and of each other, in order to conceal and convert the cash proceeds from the sale of plaintiff's 250,000 PGOG shares of stock by defendant SOLOMON CAPITAL and any profits, income or assets derived from the unlawful use thereof.  Each of the above-named defendants participated in and aided and abetted in effectuating the aforementioned conversion of plaintiff's identified funds.

40.    By reason of the foregoing, all the defendants are therefore jointly and severally liable for the damages sustained by plaintiff UNITED TORAH as a result of such conversion, which is equal to the amount specified in paragraph 33 above.

### ATTACHMENT AND SEIZURE OF ASSETS
### BASED ON FRAUD - ALL DEFENDANTS

41.    Plaintiff repeats and realleges the allegations of paragraphs 1 to 14, 16 to 28 and 30 to 33 inclusive of this Complaint, as if set forth at length hereat.

42.    The consent and agreement of plaintiff UNITED TORAH to the aforesaid transactions relating to the purchase of 250,000 PGOG stock shares was induced by means of false representations, with the intent of fraudulently inducing plaintiff to enter into such agreement on March 9, 2008, as modified on June 5, 2008, on the above stated terms, and plaintiff did in fact enter into such agreement in reliance upon such false and fraudulent representations and was damaged thereby.

43.    As part of a scheme or plan to defraud an unsuspecting plaintiff, and for the purpose of inducing plaintiff to consent and agree to the original stock purchase transaction of March 19, 2008, the defendants falsely and fraudulently represented to UNITED TORAH that (i) defendant SOLOMON CAPITAL intended to contact the appropriate parties at Perf-Go Green Inc. and/or its transfer agent and make sure that 250,000 shares thereof were to be issued in the name of UNITED TORAH, and that (ii) UNITED TORAH's wire transfer of $75,000.00 could only be made to SOLOMON CAPITAL, and not directly to Perf Go Green Inc.'s transfer agent.  In truth, as defendants well new, SOLOMON CAPITAL had no intention of giving any PGOG shares to plaintiff and never

requested that Perf-Go Green Inc. issue 250,000 unrestricted PGOG shares directly to UNITED TORAH. Upon information and belief, defendants concealed from Perf Go Green Inc. the fact that plaintiff had paid for all of the 750,000 stock shares allocated as an investment banking fee to SOLOMON SHARBAT and that plaintiff was contractually entitled to have issued 250,000 shares issued directly in its own name.

44.     Further, for the purpose of inducing plaintiff to consent and agree to the June 5, 2008 modification agreement as aforesaid, the defendants falsely and fraudulently represented to plaintiff (i) that SHARBAT was unaware that TD Ameritrade would not allow any transfer of PGOG shares via journal entry from SOLOMON CAPITAL to UNITED TORAH under the circumstances; and (ii) that defendant SOLOMON CAPITAL would help UNITED TORAH overcome such difficulty if it gave defendant SOLOMON CAPITAL the conditional power and authority, as its agent, to sell UNITED TORAH's 250,000 shares in the SOLOMON CAPITAL trading account during the next several days and that it would remit the proceeds to plaintiff UNITED TORAH within 5 days thereafter. In truth, as defendants knew, (i) Perf-Go Green Inc. never intended to transfer actual certificates, but all 750,000 PGOG shares were wired directly into a brokerage account of SOLOMON CAPITAL at TD Ameritrade, by means of a DDT system of direct, non-physical stock transfers well known to stock salesman, trader and investor SHARBAT, but not to plaintiff, and (ii) TD Ameritrade had a well-established policy not to allow transfers by journal entry in new company stock and defendants had no intention of giving any PGOG shares to plaintiff or remitting any sales proceeds thereof to plaintiff UNITED

Verified Complaint                                                          Page 16

TORAH within 5 days after the completion of its trades, but rather to defraud plaintiff and hold and dispose of such proceeds as their own.

45.    All of the aforesaid representations made to plaintiff were false when made, and were made for the sole purpose of misleading plaintiff and fraudulently inducing it to reasonably rely upon them in entering into the March 19, 2008 stock purchase agreement, as modified by the June 5, 2008 letter agreement on its stated terms, thereby enabling the defendants to defraud plaintiff. Since June 13, 2008, defendants have not only failed to turn over the sales proceeds of $685,040.00 to plaintiff but have misappropriated and disposed of such monies for SHARBAT's own use and benefit.

46.    At the time that these false representations were made, defendant SOLOMON CAPITAL, through its agent and alter ego defendant SHARBAT, knew them to be false and fraudulent and that it had no intention of abiding by any of its obligations under the terms of the June 5, 2008 modification letter agreement or turning over to plaintiff the sales proceeds of the 250,000 PGOG shares rightfully belonging to UNITED TORAH and held in trust by defendants in an agency and fiduciary capacity.

47.    At the time such false representations were made, plaintiff did not know of their falsity, but believed them to be true and reasonably relied upon them, being induced thereby to enter into the March 19, 2008 agreement, as modified by the June 5, 2008 letter agreement.

48.    Further, or the sole purpose of inducing plaintiff to believe it would receive all of the monies that rightfully belonged to it and to refrain from taking any legal action against them to compel the turnover of same, defendants have made throughout the date

hereof numerous false and fraudulent promises of (i) delayed payment due to a FINRA regulatory investigation of the PGOG trading, (ii) payments that never happened, as well as (iii) assignments of various "deals" and litigation related income in lieu thereof, that either did not materialize or could not be effectuated.

49.    In fact, SHARBAT admitted the indisputable validity of UNITED TORAH's contractual claim to the sales proceeds of the first 250,000 PGOG shares traded in the SOLOMON CAPITAL securities account at TD Ameritrade, at the time estimated to equal $675,000.00, in an e-mail to his employer vFinance Investments, Inc. dated June 8, 2008. In that e-mail, a true and accurate copy of which is annexed hereto as **Exhibit E** and incorporated herein by reference, SHARBAT states: "Solomon Capital LLC was instructed to sell some of these shares by the charity, solely as its agent, and to remit any proceeds to the charity."

50.    In a detailed follow up letter to his employer dated June 13, 2008, a true and accurate copy of which is annexed hereto as **Exhibit F** and incorporated herein by reference, which he refers to as a "donation," SHARBAT does not mention the $75,000 payment for its purchase of 250,000 shares of PGOG shares, but attached the March 19, 2008 letter and the June 5, 2008 modification agreement. After explaining his inability to make a direct or book transfer of PGOG stock shares to UNITED TORAH,  the letter goes on to say:

> [United Torah] therefore instructed Solomon Capital LLC to trade as its agent in the Solomon Capital account and to remit the proceeds to United Torah…. *I expect to do so later today or Monday, as soon I have calculated the average proceeds, and to sent you a copy of the related wire transfer or check.*

> *Moreover, to further assure that United Torah maintained full control over the trading done on its behalf through the Solomon Capital account, I allowed a representative of United Torah to execute almost all of its trades*, with my availability for advice. ..(emphasis added).

51.     Then, in a letter to the regulatory agency FINRA on September 18, 2008, a true and accurate copy of which is annexed hereto as **Exhibit G** and incorporated herein by reference, SHARBAT explains that "all aspects of the PGOG sale in question were directed by UNITED TORAH who in my eyes was the owner of the stock," that "I explained the situation to United that until there is a final resolution of the regulatory review I am unable to complete the transfer of the proceeds from the sale in question" and to "notify me upon completion of the review so that I can finally complete this donation, and put this matter behind me." See also accompanying letter from SHARBAT to UNITED TORAH dated September 16, 2008 expressing same, a true and accurate copy of which is annexed as part of **Exhibit G** and incorporated herein by reference.

52.     Subsequently, SHARBAT dragged out his FINRA excuse as a cover for the aforestated theft and conversion by SOLOMON CAPITAL and its alter egos SHARBAT and the other ENTITY DEFENDANTS of $685,040 in the trading proceeds belonging to UNITED TORAH, which it admittedly held as its agent, until mid-2009, when UNITED TORAH again demanded immediate turnover of the monies it was due. SHARBAT further delayed matters by making available for review various books and records requested by UNITED TORAH's president, admitted he had gone "wild" and dissipated all of its funds, and made false representations of payments to be made from other sources of income, although SHARBAT and his alter ego ENTITY DEFENDANTS have earned at least $1,500,000 from stock transactions involving Sponge Tech Inc., NXT Nutritionals Inc. and

Novo Energies Corporation a/k/a Immutative Inc., all now known to plaintiff. Nevertheless, plaintiff has received nothing to date.

53.     After delaying suit based on false promises of payment, SHARBAT absconded to Israel in or about January 2010, without telling UNITED TORAH, closed down his office shared with the ENTITY DEFENDANTS and, since then, has systematically moved almost all of his assets, all liquid, in cash, loans receivable or securities to bank accounts in Israel, frustrating any collection efforts by UNITED TORAH.   Annexed hereto as **Exhibit H** are true and accurate copies of bank records provided by SHARBAT to plaintiff, at different times, and incorporated herein by reference. These records provide proof of at least two personal bank accounts opened up by SHARBAT in Israel and one in the name of SOLOMON CAPITAL. Annexed hereto as **Exhibit I** is a true and accurate copy of a bank record provided by SHARBAT to plaintiff, and incorporated herein by reference, that shows SHARBAT has opened up a bank account at least for himself in Switzerland.

54.  On May 18, 2011, SOLOMON CAPITAL executed an assignment agreement, as assignor, and UNITED TORAH, as assignee, a true and accurate copy of which is annexed hereto as **Exhibit J** and incorporated herein by reference. In such agreement, SOLOMON CAPITAL assigned to UNITED TORAH a particular ligation claim in consideration of  "ASSIGNOR's obligation to remit to assignee the funds due under the June 5, 2008 as aforesaid, against which the net proceeds earned by Assignee hereunder…will be fully credited." In that assignment, SOLOMON CAPITAL admits that that it breached the June 2008 modification agreement and did not turnover any monies

rightfully belonging to Plaintiff in the following words:

> ASSIGNOR and ASIGNEE have previously entered into a letter
> modification agreement dated June 5, 2008 in which ASSIGNOR agreed to
> sell certain shares of stock belonging to ASSIGNEE   and held by
> ASSIGNOR in its trading account and **to remit the proceeds to**
> **ASSIGNEE, but to date, ASSIGNOR has not remitted any such proceeds**
> **to ASIGNEE.**

55.   The actions of defendants as aforesaid are particularly egregious and evidence a high degree of moral culpability. Defendants' conduct is so flagrant and malicious as to constitute a reckless and wanton indifference to the rights of the plaintiff, as well as the statutes of the State of California and important public policy interests that militate towards the protection of non-for-profit charitable organizations that provide beneficial and free services to the public at large. Plaintiff is therefore entitled to punitive damages of no less than $300,000.00.

57.    By reason of the foregoing, and as a proximate and direct result of defendants' fraudulent conduct as aforesaid, plaintiff has suffered damages equal to the which is equal to the amount specified in paragraph 33 above, plus punitive damages of no less than $300,000.00, no part of which has been paid, and all of the named defendants are liable therefor, jointly and severally.

**WHEREFORE** the plaintiff respectfully demands that the Court exercise its *quasi in rem* jurisdiction over the defendant's property found within the geographical borders of this district, issue an attachment and seize such property as security for a potential judgment up to an amount equal to the value of such property, which may not exceed $762,040.00 in readily ascertainable damages, including additional estimated costs

---

Verified Complaint                                                     Page 21

$5,000.00,  as a result of defendants' breach of contract, breach of trust and fiduciary duty,

conversion of trust funds and fraud,  and for such other relief as the Court may deem just

and proper in the circumstances.

      Dated:  New York, New York
             June 12, 2013

                        Yours etc.

                        SIMON SCHWARZ

Defendants' Address:

SOLOMON CAPITAL LLC
SOLOMON CAPITAL 401(k) TRUST
SOLOMON CAPITAL LIVING TRUST
SOLOMON  CAPITAL ADVISORS INC.
SOLOMON PARTNERS LLC
ADVANTAGE PREMIUM FUNDING, LLC
c/o Solomon Sharbat
Gush Halav 10, Apt.3- 2d Floor
Tel Aviv, Israel 64581

SOLOMON SHARBAT
Gush Halav 10, Apt.3- 2d Floor
Tel Aviv, Israel 64581

---

## **VERIFICATION**

I, SIMON SCHWARZ, state under penalty of perjury as follows:

1.   I am president and one of three Trustees of the plaintiff in this action, UNITED TORAH EDUCATION & SCHOLARSHIP FUND INC., and I am personally familiar with the facts alleged in the foregoing Complaint.

2.   I have read the foregoing Complaint and know the contents thereof and that the same is true of my own knowledge, except as to those matters which are alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York on this 12th day of June 2013.

SIMON SCHWARZ

---

Verified Complaint                                                                 Page 23

UNITED S ___ ES DISTRICT COURT, CENTRAL DISTRICT OF ___ IFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

*United Torah Education and Scholarship Fund, Inc.*

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

*Solomon Capital LLC, Sldom Capital 401-k Trust, Solomon Capital Living Trust, Solomo Capital Advisors, Inc, Solomon Partners LLC, Advantage Premium Finding LLC & Solomon Sharbat*

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

*Simon Schwarz, Pro Hac Vice
954 Lexington Ave. #361
N.Y. N.Y. 10021  347-852-3514*

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

*N/A*

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)
☑ *Quess In Rem*

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

*Quasi In Rem Attachment Up to Probable Judgmt for Breach of Contract & Conversion of Trust Prop*

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☑ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:** **CV13- 4330**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☑ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☑ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | N.Y. State |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: 6/12/13

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |