Simon Schwarz, Esq. *Pro Hac Vice*
Attorney for Plaintiff
954 Lexington Ave., No. 261
New York, NY 10021-5013
Tel.:   347-852-3514
E-mail: sschwarz@justice.com

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

-----------------------------------------------------X

UNITED TORAH  EDUCATION          )
& SCHOLARSHIP FUND, INC.,        )
a Florida non-for-profit corporation,  )      **Case No. CV 13-4330-DSF (PLAx)**
                                 )
                    Plaintiff,   )      **DECLARATION OF**
                                 )      **SIMON SCHWARZ, ESQ.**
          -against-              )      **IN SUPPORT OF**
                                 )      **MOTION TO VACATE**
                                 )      **JUDGMENT OF DISMISSAL**
SOLOMON CAPITAL LLC et al.       )
                                 )
                    Defendants.  )
-----------------------------------------------------X

I, **SIMON SCHWARZ,** hereby declare, pursuant to 28 U.S.C. 1746,

under penalties of perjury as follows:

1.      I am the attorney for plaintiff, UNITED TORAH EDUCATION

& SCHOLARSHIP FUND, INC. ("United Torah"), and one of its three

trustees. As such, I am personally familiar with the facts set forth herein,

unless otherwise stated to the contrary.

2.      I make this declaration in support of plaintiff's Motion for an

Order vacating the Court's Judgment of Dismissal of the within *in rem*

action dated December 18, 2010 (Docket #32) and the underlying

Memorandum Decision & Order dated December 18, 2013(Docket # 31) pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("FRCP") on the grounds that Plaintiff's failure to timely file opposition papers to said motion by December 16, 2013 (i) was the result of counsel's mistake, inadvertence or excusable neglect, (ii) that reopening the default would not prejudice the defendants in any way as a result of the approximate twelve day delay in bringing this motion, and (iii) that the plaintiff has a clear meritorious defense to the defendant's Rule 12(b)(1) motion to dismiss for lack of subject matter (diversity) jurisdiction.

3.     The within Motion further respectfully prays that the Court restore the Defendants' Motion to Dismiss (Docket # 23) to the calendar and either (A) abstain from ruling thereon and defer the jurisdictional issues raised by the defendants to the SDNY district court handling an *in personam* action seeking monetary relief on the merits in which an identical motion to dismiss has been filed, fully briefed and submitted following the exchange of pre-motion conference letters addressing the diversity issue in late August 2013, a pre-motion conference held on October , 18, 2013, and  a pre-motion scheduling order entered on October  21, 2013, on prudential grounds to avoid duplicative litigation, conserve judicial resources or, alternatively, (B) accept the declarations of  Mark Beychok, Michael Caridi, Jason Gold and

Declaration of Simon Schwarz, Esq. In Support of
Plaintiff's Motion to Vacate Judgment of Dismissal                                Page 2

Simon Schwarz appended to this Motion to Vacate and the accompanying Memorandum of Points & Authorities (Point I excluded), as Plaintiff's Response to Defendants' Motion to Dismiss *nunc pro tunc* to December 16, 2013 and deny such motion on the merits, and further, to the extent the Court deems it necessary, additional jurisdictional discovery be allowed, particularly a deposition of Solomon Sharbat, and (iii) such other and further relief as the Court deems just and proper in the circumstances.

## A. BACKGROUND FACTS

### 1.    The Nature of This Action and Its Procedural Posture

4.    On May 29, 2013, plaintiff commenced an *in personam* action against the same defendants in the federal district court for the Southern District of New York ("SDNY"), Case No. 13 CIV 3619 (RJS) (the "SDNY Action"). That action seeks a full litigation on the merits of the causes of action asserted therein and monetary relief, and is premised on diversity and personal jurisdiction of the defendants in the SDNY.

5.    The SDNY Action alleges that in July 2008, defendant Solomon Capital LLC ("Solomon Capital") failed to pay over to plaintiff certain stock sale proceeds totaling $685,040.00 from the sale of PerfGo Green shares of stock belonging to plaintiff. These proceeds are alleged to have been held in an agency capacity for plaintiff, pursuant to letter

agreements made in New York City between plaintiff and Solomon Capital. The failure of the defendants to turn over these sales proceeds to plaintiff resulted in a breach of contract, trust and fiduciary duty, fraud and conversion of trust funds. Joint and several liability is therefore sought against Solomon Capital and defendant Solomon Sharbat personally ("Sharbat"), as well as the other named entity and trust defendants, all as alter egos of Solomon Capital.

6.     Shortly after the filing of the SDNY Action, on June 18, 2013, plaintiff filed this *in rem* action in the Central District of California (Docket # 1). It seeks attachment relief only and is directed solely at the personal property of the defendants being held by two companies located in this district[1] as security for a probable judgment in the SDNY Action in accordance with FRCP 4(n)(2)[2] . The SDNY district court simply does not have the extra-territorial power to attach assets of the defendants located in the Central District of California.

---

[1] This involves securities and other liquid property owned by the defendants but currently held by Genesis Biopharma Inc. and MBA Holdings LLC-both of which have their principal place of business in the Central District of California.

[2] FRCP (n)(2) captioned "Asserting Jurisdiction over Property or Assets-State Law" states that: "On a showing that personal jurisdiction over a defendant cannot be obtained in the district where the action is brought by reasonable efforts to serve a summons under this rule, the court may assert jurisdiction over the defendant's assets found in the district. Jurisdiction is acquired by seizing the assets under the circumstances and in the manner provided by state law in that district."

7.     On June 18, 2013, concurrent with the commencement of the action, plaintiff filed an *ex-parte* application for a right to attach order and an order for the issuance of a writ of attachment (Docket ## 5-8).

8.     On June 20, 2013, the Honorable Paul L. Abrams, United States Magistrate Judge, assigned to hear the matter and in exercise of his discretion under the California attachment statute, initially denied plaintiff's application without prejudice and directed that a hearing be held on notice, and that proof of service of the attachment papers, of which the verified complaint was an integral part, be filed in accordance with his instructions (Docket # 12).

9.     Thus, the June 20, 2013, Order set the hearing on plaintiff's Application for a right to attach order for July 16, 2013, and ordered that no later than July 1, 2013, plaintiff to the Court proof that the Application and all related documents had been served on and received by Solomon Sharbat, as well as any registered agent for service of any entity defendant that has a registered agent. Mag. Judge Abrams also ordered that an opposition to the Application, if any, be filed by defendants no later than July 5, 2013, and advised that the failure to file an opposition would be construed as consent to an attachment order being entered. *Id.*

10.    On July 3, 2013, plaintiff filed proof that the Application and all related documents had been personally served on and received by Sharbat on June 28, 2013 (Docket # 14).

11.    On July 12, 2013, when defendants had not yet filed an opposition to the Application, the hearing scheduled for July 16, 2013, was ordered off calendar (Docket # 16). By order dated July 16, 2013 (Docket # 17), "based on all documents filed in support of plaintiff's unopposed Application," Mag. Judge Abrams granted plaintiff's application for a right to attach order and order for issuance of writ of attachment. At the very last paragraph, the July 16, 2013, Order specifically ordered that

> this Order shall have no force or effect until plaintiff files an undertaking in the amount of $10,000.  See Cal. Civ. Proc. Code § 489.220.  At the time of the filing of the undertaking, plaintiff shall submit proposed Right to Attach Orders and Orders for Issuance of Writ of Attachment (AT-130), fully consistent with this Order.

12.    On November 14, 2013, plaintiff deposited $10,000 to the court registry in lieu of an attachment bond (Dockets ##19, 20) and lodged a Proposed Right to Attach Order and Order for Issuance of Writ of Attachment[3] (Docket # 21) in compliance with Mag. Judge Abram's order dated July 16, 2013 (Docket # 17)

---

[3] The lodged proposed order was amended several times (see Docket ## 25, 28, 29 and Minutes (In Chambers) by Mag. Judge Abrams, Docket #27), and on December 13, 2013, such an order was entered by Mag. Judge Abrams (Docket # 30).

Declaration of Simon Schwarz, Esq. In Support of
Plaintiff's Motion to Vacate Judgment of Dismissal                    Page 6

13.     The nearly four month lag in filing an undertaking was due in large part to the October 21, 2013 vacatur of a default entry by the SDNY court clerk pursuant to FRCP 55(c) (SDNY 1:13-cv-3619 (RJS), Docket # 19), which dashed plaintiff's hopes of a default judgment in the SDNY and immediate (after 30 days) registration of that out-of-district judgment in this district, which would render moot the need for an attachment in favor of a far more effective judgment.

14.     On December 13, 2013, Mag. Judge Abrams entered a Right to Attach Order and Order for Issuance of Writ of Attachment (Docket # 30). Pursuant to that order, the Clerk of the Court issued a Writ of Attachment on December 19, 2013 (Docket # 33).

15.     The following day, on December 14, 2013, Attorney Brent Jex, Esq., representing the defendants, filed a request for an order to recall or otherwise invalidate the Writ of Attachment erroneously issued after a judgment was filed by the Honorable Dale S. Fischer, District Judge dismissing this action for lack of subject matter jurisdiction. (Docket # 34).

16.     On the same day, December 14, 2013, Mag. Judge Paul L. Abrams recalled and vacated the Writ of Attachment for the stated reason (Docket No. 35).

**2.     The Court's Prior *Sua Sponte* Orders to Show Cause and Plaintiff's Compliance Therewith**

17.     On October 23, 2013, the Court issued *sua sponte* an In Chambers Order to Show Cause ("OSC") directing plaintiff to demonstrate in writing on or before Monday, November 18, 2013, why this action should not be dismissed for lack of prosecution. The order specifically stated that filing of "proofs of service of summons and complaint on all defendants for whom such documents have not yet been filed" on or before the date indicated above "will constitute a satisfactory response to the Order to Show Cause" (Docket # 18).

18.     On November 18, 2013, in compliance with the OSC dated October 18, 2013 (Docket # 18), plaintiff filed proofs of personal service of the Summons and Complaint in Israel on June 28, 2013 by Joseph Katz upon Solomon Sharbat, individually, and as president, sole shareholder, managing member and/or trustee of each respective LLC, Corp., or Trust. Service was simultaneously effected with service of the application for an *ex-parte* right to attach order (Docket # 22).

19.     On November 20, 2013, the Court issued *sua sponte* a second in Chambers OSC directing plaintiff to show cause in writing on or before Monday, December 2, 2013, why this action should not be dismissed for lack

of prosecution (Docket # 24). Plaintiff timely responded by the filing of a response on December 2, 2013 (Docket # 26).

**3     The Defendants' Motion to Dismiss on Jurisdictional Grounds Was Filed in this Court without Making the Court Aware that an Identical Motion to Dismiss by Same Defendants Was Already In Midst of Full Litigation in the SDNY *In Personam* Action Where Merits of Claims Are Being Fully Litigated**

20.     As explained above, the sole limited relief sought in this *in rem* action was an order of attachment as security for a judgment of probable validity in the *in personam* SDNY Action seeking monetary relief against the defendants. Therefore, all substantive aspects of plaintiff's claims against the defendants, including issues of subject matter(diversity) and personal jurisdiction, are being fully litigated there on the merits.

21.     Nevertheless, following the issuance of a final right to attach order and order for the issuance of a writ of attachment by Mag. Judge Abrams on November 13, 2013(Docket # 30), after defendants were given an opportunity to litigate the attachment issue but simply declined to do so, defendants hastily filed their motion to dismiss on jurisdictional grounds on November 19, 2013 (Docket # 23), without advising the Court that the issues raised therein were already the subject of extensive pre-motion activity in the SDNY Action where, as stated, all substantive litigation on the merits of plaintiff's claims are taking place.

22.    Although an identical motion to dismiss, with some more detail, was actually filed in the SDNY two days after the motion to dismiss was filed here, on November 21, 2013 (SDNY 1:13-cv-3619 (RJS), Docket ## 22-23), the subject motion in had its roots in the SDNY in a pre-motion letter dated August 23, 2016, as required by the Local Rules of the SDNY, whereby the defendants first sought to vacate an entry of default by the SDNY Court Clerk pursuant to FRCP 55(c) on various grounds including, *inter alia*, that dismissal was warranted for lack of diversity and personal jurisdiction (*id.*, Docket # 13). The August 23, 2016, letter is annexed hereto as **Exh. A**.

23.    Plaintiff responded in the SDNY Action by way of a pre-motion letter dated August 27, 2013, annexed hereto as **Ex. B** (*see id.*, Docket # 14). Plaintiff's pre-motion letter was followed by an Order setting the matter for a pre-motion conference on Sept. 19, 2013 (*id.*). After several adjournments (*id.*, Docket ## 15-18), the conference was held on Oct. 18, 2013, followed by the court vacating the entry of default and setting a briefing schedule solely on the jurisdictional issues raised by order dated October 21, 2013(*id.*, Docket # 19).

24.    Pursuant to this briefing schedule, as subsequently modified, the defendants filed their motion to dismiss with two exhibits not filed here on November 21, 2013 (*id.*, Docket ## 22-23)(**Exh. C** hereto) and plaintiff

filed opposition papers on December 3, 2013 (*id.*, Docket ## 28-33), almost identical to the papers now being filed here as part of this Motion to Vacate, with some more detail, in order to demonstrate that plaintiff has a meritorious opposition to the defendants' motion to dismiss on jurisdictional grounds.

25.    The defendants also filed Reply papers, including an additional affidavit of Sharbat, on December 14, 2013(*id.*, Docket # 36) (**Exh. D** hereto), and the matter is now fully briefed awaiting decision of the SDNY district court.

26.    In short, on December 18, 2013, when this Court granted Defendants' motion to dismiss for lack of subject matter jurisdiction on defendants' failure to file required opposition papers on December 16, 2013 (Docket No. 31) and entered a Judgment of Dismissal without prejudice (Docket # 32), it was not made aware by the defendants of the fully briefed motion on the same issues in the SDNY Action, awaiting decision of the SDNY Court, which has been hearing all substantive matters.

**4.    The Defendant's Motion to Dismiss on Jurisdictional Grounds Was Filed in this Court without the Required Pre-Motion Conference**

27.    Further, as the defendants' November 19, 2013 Motion to Dismiss in this action mirrors the August 26, 2013, pre-motion letter and November 21, 2013, motion to dismiss filed in the New York Federal Action, where extensive pre-motion activity took place in accordance with the SDNY local rules, the reason for the failure of the attorneys for the defendants to comply with Local Rule 7-3 appears self-explanatory.

28.    Local Rule 7-3 requires a "conference of counsel prior to filing of motions" and mandates that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution."

29.    Further, the Court's Initial Standing Order entered upon filing of the complaint filed on June 19, 2013 states that "[f]ailure to comply with this Rule will be grounds for sanctions. If fault is attributed to the moving party, the Court may decline to hear the motion." (Docket # 11, Par. 7(b)).

30.    In view of the foregoing circumstances, there can be little question that the sanctionable conduct of defendants' counsel in this regard was deliberate.

**5.    Plaintiff's Failure to File Opposition Papers on December 16, 2013 was the Result of Counsel's Inadvertence and Excusable Neglect**

31.    Unfortunately, through a complete error on my part, I had failed to enter the due date for opposition papers in my calendar for December 16, 2013[4], and I was completely unaware that they were due on that date. I simply knew that the motion had been scheduled for a hearing sometime in January 2014.

32.    The week of December 16, 2013 had been an extremely hectic one for me. I had a major appellate submission on a stay motion and oral arguments the following day and a full blown fact hearing two full days thereafter.

33.    Indeed, on the due date, Attorney Jason Baker, one of the defendants' attorneys, had sent me an e-mail about 2:00 P.M. California time, inquiring "can we set a time to discuss this dispute?" *See* **Ex. E** hereto.

34.    Later that evening, the defendant Sharbat sent Mr. Baker an e-mail, with a copy to the undersigned, stating "Simon will connect with you on Wednesday-He said through my friend Michael who updates me." *Id.*

---

[4] Under Local Rule __ and the Court's Initial Standing Order, Par.  (Docket # __), Plaintiff's opposition papers to the motion to dismiss were to have been filed not later than 21 days before the hearing date scheduled for January 6, 2013, or on Monday, December16, 2013.

This was precisely because of my inability to call back Mr. Baker in light of my unusually hectic schedule stated above

35.    Unfortunately, on Wednesday afternoon, December 18, 2013, this Court had already entered its Judgment of Dismissal (Docket # 32), dispensing with the oral argument hearing scheduled for January 6, 2013 and determining that a hearing was not necessary pursuant to Local Rule 7-15.

**B.    JUDGMENT OF DISMISSAL ENTERED ON PLAINTIFF'S DEFAULT IN FAILING TO TIMELY FILE OPPOSITION PAPERS SHOULD BE VACATED PURSUANT TO Fed.R.Civ.P. 60(b)**

36.    Federal Rule of Civil Procedure ("FRCP") 60(b)(i) allows a court to relieve a party *or a party's legal representative* on motion for relief from a final judgment on the basis of "mistake, inadvertence, surprise, or excusable neglect." As more fully addressed in Point I of plaintiff's accompanying Memorandum of Points & Authorities, a judgment by default is a drastic step which is appropriate only in extreme circumstances, and a case should, whenever possible, be decided on the merits.

37.    The three factors generally considered by the courts in evaluating "excusable neglect" are: (1) whether reopening the default would *prejudice* the non-moving party; (2) whether it was the moving party's *culpable* conduct that led to the default; and (3) whether the moving party

---

has a *meritorious defense*. Analysis of these three factors is at bottom an equitable one taking account of all relevant circumstances surrounding the party's omission.

38.     As to the first factor, to be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case such as, for example, hindering the defendant's ability to pursue his defense because the delay resulted in tangible harm.  Here, plaintiff filed has filed this motion less than two weeks after the Court dismissed the case and the defendants have done nothing to date to defend against the action or the grant of an order of attachment despite having received actual notice of the suit and concomitant motion for an attachment on July 16, 2013, except to file months later their motion to dismiss on jurisdictional grounds just as a writ of attachment was about to be entered upon plaintiff's deposit of $10,000 in the registry of the court in lieu of a bond. Accordingly, the slight one week delay could have no impact on the proceedings or the defendants, and they have not suffered any prejudice.

39.     As to the second factor noted above, the Ninth Circuit has held that a defaulting party's conduct is culpable only if it *intentionally* failed to answer. In this context the term "intentionally" means that a movant cannot be treated as culpable simply for having made "a conscious choice not to

answer" or for having demonstrated "simple carelessness." For example, a neglectful failure to answer as to which the defendant offers a credible, good faith explanation that negates any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process is not "intentional." Culpability is typically found only if there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.

40.    Here, I have provided a credible, good faith explanation for my neglectful failure to timely file opposition papers. The response deadline of December 16, 2013 was not on my calendar for that day and I acted with mere oversight and simple carelessness. There is not a scintilla of evidence that my failure to respond was devious, deliberate, willful, or in bad faith or that I had any intention to take advantage of the defendants, interfere with judicial decision making, or otherwise manipulate the legal process in a manner that would make my conduct "intentional." To the contrary, the judgment of dismissal obtained by this default has only hurt plaintiff and prevented a much litigated writ of attachment from being effectuated. If there was any devious, deliberate, willful, or bad faith conduct or otherwise manipulating the legal process, the evidence recited above points at the defendants' attorneys, not at plaintiff.

Declaration of Simon Schwarz, Esq. In Support of
Plaintiff's Motion to Vacate Judgment of Dismissal                    Page 16

41.    As to the third factor of a "meritorious defense," the existence of concurrent litigations over the same issue and their differing nature, as discussed above (*see* ¶¶ 20-26, *supra*), strongly suggests that this Court should have, and probably would have, abstained from ruling on the defendants' motion to dismiss had it been fully apprised of the relevant facts, thereby avoiding duplicative litigation and conserving scarce judicial resources.

42.    Due consideration of these factors further militates against this Court ruling on the merits of the diversity issue given in its limited in rem role occasioned only by the lack of extraterritorial attachment powers of the SDNY district court, which will make a comprehensive disposition of litigation on the merits of plaintiff's claim and has already been fully briefed by both parties on the diversity issue.

43.    Even if this Court were to decide that it should resolve the diversity jurisdiction issue raised by the defendants on the merits, the annexed Declarations of Mark Beychok, Michael Caridi and Simon Schwarz demonstrate a meritorious defense in that Sharbat failed to produce any evidence that his original domicile established by his admitted birth and over 40 years of living in New York was changed to Israel in 2010. Accordingly,

there is complete diversity between plaintiff, a Florida charity, and each and every entity, trust and individual defendant who is a citizen of New York.

44.     The declarations of Mark Beychok, Michael Caridi, Jason Gold and Simon Schwarz  demonstrate, inter alia, (1) that Sharbat continues to conduct his New York investment business unchanged under the same active and registered entity and trust alter egos as before he moved to Israel, and that such alter egos dominated by Sharbat maintain bank and brokerage accounts in New York and are the sole source of his income, (2) that Sharbat closed all his personal accounts in New York in late 2012 only after his ex-attorney Ronald A. Nimkoff had obtained a default judgment against him for about  $336,000 and used enforcement devices to freeze five accounts; (3) that although he obtained an Israeli driver's license in March 2011, he owns no car there and uses a hired driver, but did own a Porsche, registered in New York, and parked at his parent's home in New York through late 2012, when they sold it, (4) that he never owned any real estate in the United States; and (5) that he has made repeated admissions against interest to Beychok, Caridi and Gold to the effect that he is planning to return to New York in about five years and that he only temporarily resides in Israel and has avoided visiting the United States so that he does not get caught up in an ongoing federal investigation and/or prosecution of fraudulent penny stock

dump-and-pump schemes in which he had been previously involved, particularly the notorious Sponge Tech stock scandal which led to a major federal investigation in late October 2009, followed by indictments in May 2010. *See* Caridi Decl., ¶¶ 3-5; Beychok Decl. ¶¶ 7-9; Gold Decl., ¶¶ 3-4).

45.    Last, but by no means least, as the additional Schwarz Decl., ¶¶ 5, 11-20, demonstrates, Sharbat's true intent to return to New York is established by Sharbat's own prior sworn statements, or by attorneys on his behalf, in court filed documents in the SDNY annexed as exhibits to the accompanying Schwarz Declaration, immediately before, and shortly after, he fled to Israel in January 2010. The latter documents simply contradict the false claim he now conveniently advances that he left New York "permanently" to "immigrate" to Israel in January 2010.

46.    In sum, plaintiff respectfully prays that the Court vacate the judgment of dismissal and the underlying Memorandum Decision & Order and either abstain from ruling on the defendant's motion to dismiss on jurisdictional grounds for the prudential reasons stated, or alternatively, restore the Defendants' Motion to Dismiss dated Nov. 19, 2013 (Docket #19) to the calendar and accept the declarations of Mark Beychok, Michael Caridi, Jason Gold and Simon Schwarz appended hereto, as well as the accompanying Memorandum of Points & Authorities (Point I excluded) as plaintiff's

Response to Defendants' Motion to Dismiss *nunc pro tunc* to December 16, 2013.

47.     Further, if and only to the extent the Court reinstates the motion to dismiss and deems it necessary to hold an evidentiary hearing to adjudicate such motion, Plaintiff respectfully requests that additional jurisdictional discovery be allowed, particularly a deposition of Sharbat.

48.     Declarant declares under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

WHEREFORE plaintiff respectfully requests that the defendants' motion to dismiss be denied in its entirety, and that the Court either abstain from ruling on the diversity issue or, alternatively, reinstate such motion, accept the appropriate opposition papers submitted herewith (as identified in ¶ 46 above)   as opposition to such motion, and, the additional discovery relief requested in ¶ 47, *supra*, if necessary, together with such other and further relief this Honorable Court deems just and proper.

Dated: December 30, 2013
New York, N.Y.

Simon Schwarz, Esq.

Declaration of Simon Schwarz, Esq. In Support of
Plaintiff's Motion to Vacate Judgment of Dismissal

# EXHIBITS ANNEXED TO DECLARATION
# OF SIMON SCHWARZ, ESQ.

## TABLE OF CONTENTS

**Exh. A- Defendants' Pre-Motion Letter dated August 23, 2016 in SDNY Action**

**Ex. B-Plaintiff's responding pre-motion letter dated August 27, 2013in SDNY Action**

**Exh. C-Motion to Dismiss filed November 21, 2013 in SDNY (SDNY 1:13-cv-3619 (RJS), Docket ## 22-23**

**Exh. D-Defendants' Reply Papers, including additional affidavit of Sharbat, filed on December 14, 2013 in SDNY (*id*., Docket # 36)**

**Ex. E-E-Mails Exchanged on December 16 & 18, 2013**